Matthew L. Rollin (SBN 332631)
**SRIPLAW, P.A.**
8730 Wilshire Boulevard
Suite 350
Beverly Hills, California 90211
323.452.5600 – Telephone
561.404.4353 – Facsimile
Matthew.rollin@sriplaw.com

Counsel for Plaintiff
Viral DRM LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRAL DRM LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>YOUTUBE UPLOADERS LISTED ON<br>SCHEDULE A,<br><br>        Defendants. | CASE NO.: 3:23-cv-04300<br><br>**PLAINTIFF'S APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND ORDER RESTRAINING TRANSFER OF ASSETS AND INCORPORATED MEMORANDUM OF LAW** |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT Plaintiff Viral DRM, LLC ("Viral DRM" or "Plaintiff") hereby requests that this Court, *ex parte*, for an order entering a temporary restraining order, preliminary injunction and order restraining transfer of assets.

This application is made on the grounds that: Defendants' unlawful activities have deprived and continue to deprive Plaintiff of its right to determine the manner in which its copyrights are presented to the public. Defendants have and continue to wrongfully trade and capitalize on Plaintiff's copyrights. By their activities, Defendants are defrauding Plaintiff, certain non-party businesses, and the consuming public for their own benefit.

This application will be based on this Notice of Application, Memorandum of Points and Authorities, and the Declarations of Matthew Rollin and Brandon Clement filed herewith.

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

**SRIPLAW**

1 DATED:  August 23, 2023     /s/ Matthew L. Rollin

2                 MATTHEW L. ROLLIN

3                 **SRIPLAW**

                 Attorneys for Plaintiff Viral DRM, LLC

## **<ins>TABLE OF CONTENTS</ins>**

I.   INTRODUCTION ............................................................................................. 1

II.  STATEMENT OF FACTS ............................................................................... 2

   A.   BACKGROUND ON VIRAL DRM AND ITS CREATORS AND THEIR COPYRIGHTED WORKS ............................................................................... 2

   B.   DEFENDANTS' ILLEGAL DOWNLOADING, UPLOADING, AND FALSE COUNTERNOTICES ............................................................................... 3

III. ARGUMENT.................................................................................................... 6

   A.   A TEMPORARY RESTRAINING ORDER IS ESSENTIAL TO PREVENT IMMEDIATE INJURY............................................................................................................... 6

   B.   STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION. ............................................................................................... 7

      1.   Probability of Success on the Merits of Plaintiff's Claims. ................. 8

      2.   Plaintiff is Suffering Irreparable Injury. ............................................ 10

      3.   The Balance of Hardship Tips Sharply in Plaintiff's Favor. .............. 11

      4.   The Relief Sought Serves the Public Interest. ................................... 11

   C.   The Equitable Relief Sought is Appropriate. ......................................... 12

      1.   Entry of an Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Copyrights is Appropriate. ..................................................................... 12

      2.   Entry of an Asset Freeze Order Prohibiting Transfer of the Defendants' YouTube Channels, Defendants' AdSense Accounts, and Defendants' Funds Held in their AdSense Accounts and Associated Accounts During the Pendency of this Action is Appropriate. ....... 12

   D.   A Bond Should Secure the Injunction. .................................................... 14

IV.  CONCLUSION ............................................................................................... 14

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

# TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*Adobe Sys. v. Brenengen*,
   928 F. Supp. 616 (E.D.N.C. 1996) ............................................................ 11

*Amaretto Ranch Breedables, L.L.C. v. Ozimals, Inc.*,
   790 F. Supp. 2d 1024 (N.D. Cal. 2011) ...................................................... 9

*Apple Inc. v. Samsung Elecs. Co.*,
   809 F.3d 633 (Fed. Cir. 2015) ................................................................. 11

*Beaty v. Brewer*,
   649 F.3d 1071 (9th Cir. 2011) ................................................................... 7

*C.B. Fleet Co. v. Unico Holdings, Inc.*,
   510 F. Supp. 2d 1078 (S.D. Fla. 2007) ..................................................... 11

*Cadence Design Sys. v. Avant! Corp.*,
   125 F.3d 824 (9th Cir. 1997) ................................................................... 10

*Cisco Sys. v. Shenzhen Usource Tech. Co.*,
   2020 U.S. Dist. LEXIS 127509 (N.D. Cal. July 20, 2020) ......................... 12

*CSC Holdings, Inc. v. Greenleaf Elecs.*,
   2000 WL 715601 (N.D. Ill. June 1, 2000) ................................................. 13

*Disney Enters. v. VidAngel, Inc.*,
   869 F.3d 848 (9th Cir. 2017) ..................................................................... 7

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ............................................................................... 10

*F.T. Int'l Ltd v. Mason*,
   2000 WL 1514881 (E.D. Pa. ?MONTH? ?DAY?, 2000) ............................ 13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ................................................................................. 8

*Feldenkrais Guild of N. Am. v. Wildman*,
   2018 U.S. Dist. LEXIS 73714 (N.D. Cal. May 1, 2018) ............................. 12

*Fox Film Corp. v. Doyal*,
   286 U.S. 123 (1932) ............................................................................... 10

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) ..................................................................... 7

*Go Daddy Operating Co. v. Ghaznavi*,
   2018 U.S. Dist. LEXIS 33002 (N.D. Cal. Feb. 28, 2018) ......................... 11

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

*Grupo Mexicano De Desarrollo v. All. Bond Fund*,
    527 U.S. 308 (1999) ................................................................ 14

*Gucci Am., Inc. v. Los Altos Boots, Inc.*,
    2014 U.S. Dist. LEXIS 190411 (C.D. Cal. Aug. 27, 2014) ..................... 12

*Handshoe v. Perret*,
    270 F. Supp. 3d 915 (S.D. Miss. 2017) ........................................ 9

*Int'l Star Class Yacht Racing Ass'n v. Hilfiger*,
    80 F.3d 749 (2d Cir. 1996) ................................................... 13

*Kemp v. Peterson*,
    940 F.2d 110 (4th Cir. 1991) ................................................. 13

*Lenz v. Universal Music Corp.*,
    815 F.3d 1145 (9th Cir. 2016) ................................................. 9

*Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.* ,
    51 F.3d 982 (11th Cir. 1995) .............................................. 13, 14

*Op. Corp. v. Roca Lab'ys, Inc.*,
    2016 WL 6824383 (M.D. Fla. Nov. 17, 2016) ................................. 8-9

*Reebok Int'l Ltd. v. Marnatech Enter.*,
    737 F. Supp. 1521 (S.D. Cal. 1989) .......................................... 14

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) .................................................. 10

*SEC v. ETS Payphones, Inc.*,
    408 F.3d 727 (11th Cir. 2005) ............................................... 13

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.* ,
    240 F.3d 832 (9th Cir. 2001) ................................................. 7

*Talavera Hair Prods., Inc. v. Taizhou Yunsung Elec. Appliance Co.*,
    2018 U.S. Dist. LEXIS 199020 (S.D. Cal. May 10, 2018) ...................... 12

*Tierra Caliente Music Grp. v. Ser-Cal. Discos*,
    2016 WL 6824383 (M.D. Fla. Nov. 17, ?YEAR?) ................................. 9

*Victor Elias Photography, L.L.C. v. ICE Portal, Inc.*,
    43 F.4th 1313 (11th Cir. 2022) ............................................ 9-10

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ............................................................ 7

v

**Statutes**

17 U.S.C. § 502 ........................................................................................................ 12

17 U.S.C. § 512 ...................................................................................................2, 3, 8, 9

17 U.S.C. § 1202 ................................................................................................... 9, 10

17 U.S.C. § 1203 ........................................................................................................ 2

**Rules**

Fed. R. Civ. P. 65 ................................................................................................. 6, 7, 14

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Plaintiff VIRAL DRM LLC by and through undersigned counsel, hereby moves this Court for a temporary restraining order, and upon expiration of the temporary restraining order, a preliminary injunction against Defendants, and an order restraining transfer of assets, pursuant to 17 U.S.C §§ 502, 512(f), 1203, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a), and this court's inherent authority, and in support thereof states as follows:

## I.      INTRODUCTION

Plaintiff, Viral DRM, LLC, is a syndicator of award-winning videographic content created by talented videographers who travel around the globe in pursuit of Mother Nature's wrath. Plaintiff's videographers and photographers cover weather extremes from tornadoes, hurricanes, flooding, blizzards, volcanoes and climate change impacts.

Defendants are foreign YouTube uploaders who operate popular and financially lucrative YouTube channels. Defendants are physically located outside the United States living in countries with lax copyright protection and weak legal regimes. Defendants downloaded copies of plaintiff's copyrighted videographic works from the internet and then uploaded plaintiff's works to their YouTube channels where they placed advertising on plaintiff's videos to earn advertising revenue, grow their YouTube channel subscriber base, and engage in other money-making business activities using plaintiff's copyrighted media content.

Plaintiff discovered the unauthorized use of its works by defendants. The works pirated by defendants on YouTube are listed on Schedule A to the complaint. Upon discovering the defendants' unauthorized use, plaintiff submitted DMCA take-down notices to YouTube that are attached as Exhibit 3 to the complaint. Defendants responded to plaintiff's DMCA notices with false counternotices attached as Exhibit 4 to the complaint. Defendants' false counternotices claimed that defendants owned the rights to the plaintiff's works or asserted other false claims to lawful use in bad faith. The statements defendants made in the counternotices were materially false and defendants lacked a subjective good faith belief in the false statements contained therein when they made the false statements.

The Copyright Act allows plaintiff to obtain an accounting and to recover, as an equitable remedy, the actual damages suffered as result of the infringement and any additional profits of the

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

defendants that are attributable to the infringement and are not taken into account in computing the actual damages. See 17 U.S.C. § 504(b), 512(f), 1203. This disgorgement remedy will be worthless unless the funds defendants' earned from advertising placed on their videos on their lucrative YouTube channels are frozen. Plaintiff has good reason to believe these foreign defendants will hide or transfer their ill-gotten advertising revenue beyond the jurisdiction of this Court unless the payments made to them by Google and the funds in their accounts are restrained.

To preserve the disgorgement and accounting remedy, Plaintiff seeks an order restraining defendants' assets, including specifically (1) funds paid to or due in the future to the defendants for YouTube advertising revenue within the control of YouTube and Google LLC, and (2) funds in the possession of or transmitted through electronic funds transfer services, foreign banks and domestic banks, payment service providers and money transfer services that defendants use to transfer funds to themselves or others from their Google Adsense accounts.

## II.   STATEMENT OF FACTS

### A.   BACKGROUND ON VIRAL DRM AND ITS CREATORS AND THEIR COPYRIGHTED WORKS

1.   Viral DRM is a Mississippi limited liability company that syndicates and licenses video content, especially content depicting extreme weather events. Brandon Clement is the CEO of Viral DRM. (Clement Decl. ¶ 1).

2.   Clement is a storm chaser specializing in shooting viral video for broadcast and distribution. Along with his wife Mandi who is also a storm chaser, Clement has captured many tornadoes, hurricanes and other severe weather events on video. In 2017, Clement dedicated himself full-time to storm videography. That same year he founded WXchasing, his production company that creates the videographic work that Viral DRM syndicates and licenses. Clement also operates Live Storms Media, the popular YouTube channel where WXchasing and Viral DRM's videos are published. Clement's success in storm chasing and videography has earned WXChasing and Live Storms Media over 350,000 followers on YouTube. His companies owns or exclusively license more than 125 million minutes of video, and has received well over 15 billion views in the US across social media platforms, digital, apps and broadcast. (Clement Decl. ¶ ¶ 2-6).

3.      Viral DRM represents Clement's work and the work of numerous other award-winning videographers and storm chasers who make their living from their creativity and the risks they take shooting extreme events around the globe. The Live Storms Media YouTube channel and Facebook page are extremely popular destinations for viewers seeking out extreme weather event footage. (Clement Decl. ¶¶ 9-10).

4.      The works at issue in this case are listed on Schedule A to the complaint. All the works are original works of authorship created by Clement or one of the other authors/creators listed on Schedule A. All the works are exclusively licensed to Viral DRM for distribution and syndication pursuant to written agreements that provide Viral DRM with the necessary rights to sue for the infringements at issue in this case. All the works at issue in this case listed on Schedule A contained watermarks and embedded metadata copyright management information identifying them as the property of WXchasing's Live Storms Media business affiliated with Viral DRM. (Clement Decl. ¶ 11).

5.      The plaintiff or its affiliated companies display videos of extreme weather events that are frequently copied, downloaded, and reuploaded by infringers. Plaintiff is a popular and frequent source of footage of weather events that cannot be obtained elsewhere. Plaintiff's videos are a frequent target for infringers and pirates. (Clement Decl. ¶ 16).

6.      All the works at issue in this case are valuable for displaying on YouTube and Facebook. All the works at issue show dramatic weather events that make for compelling and interesting viewing by interested viewers worldwide. All the works at issue also can be used to earn money from advertising on YouTube. (Clement Decl. ¶ 17).

**B.      DEFENDANTS' ILLEGAL DOWNLOADING, UPLOADING, AND FALSE COUNTERNOTICES**

7.      The defendants listed on Schedule A are YouTube uploaders whose identities were all falsified on YouTube. The true identities of the defendants were obtained by subpoena from Google, LLC pursuant to 17 U.S.C. § 512(h) in the companion miscellaneous case 2023-mi-00012. Google, LLC's response to the subpoena issued by this court in the companion miscellaneous case 2023-mi-

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

00012 revealed that the identifying information defendants provided in their counternotices attached to the complaint as Exhibit 4 was false information. (Clement Decl. ¶ 13).

8. Defendants operate extremely popular and valuable YouTube channels with over 100,000 subscribers, numerous videos, and videos with over 100,000 views or more. Defendants earn significant revenue from the display of pirated video content. (Clement Decl. ¶ 14).

9. The defendants listed on Schedule A had access to and downloaded Viral DRM's copyrighted works from Viral DRM's affiliated Live Storms Media YouTube channels or Facebook pages online. It is easy to download videos from YouTube and Facebook; there are numerous free and low-cost tools available online that a downloader can use to copy and download video content. Just search "download YouTube videos" on Google. These tools are easy to find and they make copyright infringement easy and frictionless for video pirates. (Clement Decl. ¶ 15).

10. The defendants identified on Schedule A to the complaint each infringed at least three of Viral DRM's copyrighted works as shown on Schedule A. The defendants identified on Schedule A all downloaded and copied Viral DRM's copyrighted works identified on Schedule A. The defendants identified on Schedule A all edited, cropped or altered Viral DRM's copyrighted works shown on Schedule A. When they edited Viral DRM's copyrighted works shown on Schedule A, the defendants removed or altered Viral DRM's copyright management information watermarks and CMI metadata. The defendants listed on Schedule A to the complaint then reuploaded the resulting videos they created using Viral DRM's copyrighted works to their YouTube channels and enabled advertising on them to earn monetization revenue. When the defendants reuploaded the videos they created using Viral DRM's copyrighted works they falsely claim to be the creators or owners of the videos on their channels. (Clement Decl. ¶ 19).

11. All the defendants listed on Schedule A to the complaint monetized the videos they stole from Viral DRM. All the defendants enabled advertisements to be displayed on their videos allowing them to earn money through the YouTube Partner Program. (Clement Decl. ¶ 15).

12. All of the works at issue in this case listed on Schedule A to the complaint were discovered on the defendants' YouTube channels in videos that the defendants uploaded to

YouTube. Some of the videos belonging to plaintiff were edited into a larger video compilation by defendants. (Clement Decl. ¶ 21).

13.     By uploading content to YouTube, you are implicitly declaring that you have the necessary rights or permissions to distribute and share that content. YouTube's Terms of Service state that users must only upload content to which they have the necessary rights. This means that you should not upload copyrighted material unless you have obtained permission from the copyright holder or your use of the material falls within a legally recognized exception, such as fair use. If a video receives a copyright claim or takedown notice, YouTube requires the user to provide evidence that the user has the necessary rights to use the copyrighted material. (Clement Decl. ¶ 19).

14.     After discovering the videos listed on Schedule A to the complaint on the dates indicated in Exhibit 2, Viral DRM submitted DMCA takedowns to YouTube which are attached to the complaint as Exhibit 3. In response to all the takedowns submitted, the defendants listed on Schedule A all submitted false and misleading counternotices in which they claimed to have the rights to display Viral DRM's videos on YouTube. (Clement Decl. ¶ 26).

15.     None of the defendants had authorization from Viral DRM to display its videos. None of the defendants had valid bases to claim the content was wrongfully removed. None of the defendants could have had valid good faith beliefs that the material was removed due to a mistake. (Clement Decl. ¶ 23).

16.     The defendants' counternotices are not just misleading, they are false and fraudulent. Several different defendants listed on Schedule A to the complaint gave the same contact information even though they are different individuals who reside in different countries. (Compare Exhibit 4 to the complaint to Schedule A). Several different defendants also provided the same false and bad faith explanations in their counternotices why they claimed that they had valid bases to claim that the content identified in Viral DRM's DMCA notices was wrongfully removed. This indicates that the defendants are acting in concert with each other in operating their YouTube channels and pirating Viral DRM's video content. (Clement Decl. ¶ 24).

17.     The defendants listed on Schedule A to the complaint have earned hundreds of thousands of dollars from monetizing pirated videos including Viral DRM's videos. The defendants

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

had no right to earn money from pirated content. In order to obtain an accounting and disgorgement of the defendants' profits from their illegal piracy of Viral DRM's videos, Viral DRM needs to obtain information from YouTube (Google) on the amount of money the defendants earned in advertising revenue from videos posted on their YouTube channels. Viral DRM cannot obtain that information without a court order. (Clement Decl. ¶ 25).

18.    All of the defendants are located outside of the United States. Defendants will abscond with their ill-gotten gains from monetizing pirated videos on YouTube unless this Court orders their Google AdSense accounts frozen and also freezes the defendants' funds transferred from their Google AdSense accounts in the possession of or transmitted through electronic funds transfer services, foreign banks and domestic banks, payment service providers and money transfer services that defendants use to transfer funds to themselves or others from their Google Adsense accounts. (Clement Decl. ¶ 28).

## III.    ARGUMENT

### A.    A TEMPORARY RESTRAINING ORDER IS ESSENTIAL TO PREVENT IMMEDIATE INJURY

A temporary restraining order may be granted without written or oral notice where "specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). Entry of a TRO is warranted here. Plaintiff demonstrated that (1) defendants engaged in copyright infringement and piracy of plaintiff's videos on YouTube; (2) defendants monetized their pirated videos and earned thousands of dollars in advertising revenue from video piracy; (3) defendants responded to DMCA takedown notices with false and misleading counternotices in which they falsely and in bad faith claimed to have the rights to display Viral DRM's videos on YouTube; (4) defendants all gave false contact information in their counternotices to avoid detection and discovery of their true identities; (5) defendants all reside outside the United States in countries with weak legal regimes and copyright protections where pursuing defendants for recovery of plaintiff's damages will be impossible.

The entry of a Temporary Restraining Order would immediately preserve the *status quo* and freeze the defendants' funds and YouTube accounts and channels until such time as a hearing can be held. Absent a TRO, defendants can and, based upon plaintiff's counsel's past experience, will significantly alter the *status quo* before the Court can determine the parties' respective rights.

The YouTube channels at issue are under defendants' complete control, and defendants can change ownership, transfer funds, change payment accounts, and transfer assets and ownership of their YouTube channels at a moment's notice. (Rollin Decl. ¶ 7). Defendants can easily and quickly transfer and secret the funds sought to be restrained and thereby thwart the Court's ability to grant meaningful accounting and disgorgement of profits relief. *(Id.)*

Defendants' assets will be unavailable for recovery or an accounting of profits without the entry of a TRO. The business of infringers is built on deliberate misappropriation of rights and property belonging to others. Proceeding on an *ex parte* basis is a well-established practice.

### B.    STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

In the Ninth Circuit, "[t]he standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction." *Beaty v. Brewer*, 649 F.3d 1071 (9th Cir. 2011). *See also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 24*0 F.3d 832, 839 n.7 (9th Cir. 2001).

"To be entitled to injunctive relief, a movant must demonstrate (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balances of equities tips in his favor, and (4) that an injunction is in the public interest." *Beaty*, 649 F.3d at 1071 citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

"A preliminary injunction may also be appropriate if a movant raises 'serious questions going to the merits' and the balance of hardships … tips sharply towards' it, as long as the second and third *Winter* factors are satisfied." *Disney Enters. v. VidAngel, Inc.*, 869 F.3d 848, 856-57 (9th Cir. 2017). "Likelihood of success on the merits 'is the most important' *Winter* factor." *Disney Enters*, 869 F.3d at 856 quoting *Garci v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

1.     **Probability of Success on the Merits of Plaintiff's Claims.**

    a)     **Likelihood of success on copyright infringement**

A copyright infringement action requires a plaintiff to prove (1) ownership of a valid copyright, and (2) actionable copying by the defendant. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff has established it is the owner of valid copyrights in the works listed on Schedule A to the complaint. Plaintiff registered the works at issue that are the subject of the copyright claim in the complaint with the Copyright Office as shown Schedule A, and true and correct copies of the copyright registrations are attached to plaintiff's complaint as Exhibit 2. Plaintiff's valid copyright registrations satisfies the first prong of the test for copyright infringement.

Plaintiff has also established defendants' actionable copying based on the testimony in plaintiff's declaration and the schedule thereto showing the locations in the defendants' videos where plaintiff's works are reproduced. (Clement Decl. ¶ 21). Therefore, a likelihood of success on plaintiff's copyright infringement claim is established.

    b)     **Likelihood of success on claims of misrepresentation and fraud under 17 U.S.C. § 512(f)**

This section provides:

(f) Misrepresentations. Any person who knowingly materially misrepresents under this section—

(1) that material or activity is infringing, or

(2) that material or activity was removed or disabled by mistake or misidentification,

shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

17 U.S.C. § 512.

To state a claim under this provision, a plaintiff must allege that a "'takedown' actually occurred"—that is, that 'the service provider . . . 'remov[ed] or disabl[ed] access' to the allegedly infringing material." *Opinion Corp. v. Roca Labs, Inc.,* No. 8:15-CV-811-17AEP, 2016 WL

6824383, at *3 (M.D. Fla. Nov. 17, 2016) (quoting 17 U.S.C. § 512(f)); *see also Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1029 (N.D. Cal. 2011) (dismissing plaintiff's Section 512(f) claim "with prejudice because no takedown occurred").

Most of the cases applying § 512(f) apply subsection (1) of the statute relating to false takedown notices. However, cases applying subsection (2) confirm that "subsection (2) refers to misrepresentations in a put-back notice." *Tierra Caliente Music Group v. Ser-Ca Discos*, No. 7:18-CV-2522019, U.S. Dist. LEXIS 241090, 2019 WL 13109708 (S.D. Tex. Aug. 14, 2019) (motion for summary judgment on claim of violation of § 512(f) in a counternotice denied); *Handshoe v. Perret*, 270 F. Supp. 3d 915 (S.D. Miss. 2017) (motion to dismiss claim of violation of § 512(f) in a counternotice denied). See also generally *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2015) (discussing DMCA's "put-back" procedures).

Here, plaintiff has demonstrated that the defendants lied in their counternotices submitted pursuant to the DMCA put-back procedures. Defendants' counternotices were false and fraudulent. Several different defendants gave the same contact information in their counternotices even though they are different individuals who reside in different countries. Several different defendants also provided the same false and bad faith explanations in their counternotices. Even though the applicable bad faith standard is a high standard, the defendants clearly violated it here.

c)     **Likelihood of success on claims of CMI removal and falsification under 17 U.S.C. § 1202**

To establish a claim of violating Section 1202(a), plaintiff must prove that defendants "knowingly and with the intent to induce, enable, facilitate, or conceal infringement—provide[d] copyright management information that is false." 17 U.S.C. § 1202(a).

To establish a claim of violating Section 1202(b), plaintiff must prove that defendants "intentionally remove[d] or alter[ed] any copyright management information…having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b).

Copyright management information ("CMI") includes visible CMI like watermarks and invisible CMI like metadata embedded in the works. See *Victor Elias Photography, LLC v. ICE*

SRIPLAW

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

*Portal, Inc.,* 43 F.4th 1313, 1316 (11th Cir. 2022); 17 U.S.C. § 1202(c). All the works at issue in this case listed on Schedule A contained watermarks and embedded metadata copyright management information identifying them as the property of WXchasing's Live Storms Media business affiliated with Viral DRM. (Clement Decl. ¶ 17).

Plaintiff demonstrated a likelihood of success that defendants violated both § 1202(a) and (b). The defendants identified on Schedule A all edited, cropped or altered Viral DRM's copyrighted works shown on Schedule A. When they edited Viral DRM's copyrighted works shown on Schedule A, the defendants removed or altered Viral DRM's copyright management information watermarks and CMI metadata. The defendants then reuploaded the resulting videos they created using Viral DRM's copyrighted works to their YouTube channels and enabled advertising on them to earn monetization revenue. When the defendants reuploaded the videos they created using Viral DRM's copyrighted works they falsely claim to be the creators or owners of the videos on their channels. (Clement Decl. ¶ 19).

### 2.    Plaintiff is Suffering Irreparable Injury.

A copyright holder possesses "the right to exclude others from using his property." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (citing *Fox Film Corp. v. Doyal*, 286 U.S. 123 (1932)). Defendants' infringing conduct deprives Plaintiff of control over his exclusive copyright rights, causing irreparable harm. *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010) (holding violation of copyright owner's "right to exclude" renders monetary remedies inadequate in a wide range of circumstances) (quoting *eBay*, at 395). These harms are notoriously difficult to quantify, and accordingly are considered irreparable. "[A] presumption of irreparably injury arises if the plaintiff is able to show a likelihood of scucess on the merits of its copyright infringement claim." *Cadence Design Sys. v. Avant! Corp.*, 125 F.3d 824, 826-27 (9th Cir. 1997).

Defendants blatantly copied plaintiff's works. Defendants downloaded, edited, and reuploaded plaintiff's works to YouTube. Defendants stripped out and edited out plaintiff's CMI in the process. When plaintiff notified YouTube of the infringement, defendants submitted false counternotices to put the content back up. Only because plaintiff filed this lawsuit did the video piracy committed by defendants stay off YouTube.

10

Defendants' actions are in total disregard for plaintiff's right to exclude them from using its works and cause plaintiff irreparable harm to its efforts to monetize and profit from its works. Every time defendants pirate and upload another of plaintiff's videos, plaintiff suffers a direct loss from lost licensing fees and uncontrolled distribution of plaintiff's content that monetary damages cannot adequately compensate for because they fail to address the loss of control over plaintiff's intellectual property and goodwill.

Overall, unauthorized YouTube uploads of copyright infringing videos have significantly harmed plaintiff by undermining their revenue streams, diluting their brand and reputation, fragmenting their audience, compromising creative control, and imposing legal complexities and costs. These damages are neither calculable nor precisely compensable.

### 3.    The Balance of Hardship Tips Sharply in Plaintiff's Favor.

Because defendants are engaged in infringement, "the only hardship [they] will suffer as a result of an injunction is court-ordered compliance with the copyright laws." *Adobe Systems, Inc. v. Brenengen*, 928 F. Supp. 616, 618 (E.D.N.C. 1996).  In other copyright cases, the Courts have ruled that the evidence of irreparable harm to plaintiff far outweighs the harm that a preliminary injunction may cause Defendants. *CB Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007) (holding a company cannot build a business on infringements and then argue that enforcing the law will cripple that business).

Defendants will suffer no legitimate hardship in the event a temporary restraining order is issued because defendants have no right to engage in their present infringing activities.

### 4.    The Relief Sought Serves the Public Interest.

"[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." *Apple Inc. v. Samsung Elecs*. Co., 809 F.3d at 647. The public also has a strong interest in protecting the rights of a trademark holder. *Go Daddy Operating Co., LLC v. Ghaznavi,* 2018 U.S. Dist. LEXIS 33002, at *39 (N.D. Cal. Feb. 28, 2018).

Furthermore, the public interest favors entry of a preliminary injunction to protect the consumer from being defrauded and misled by infringement. *Id.*

11

**C.      The Equitable Relief Sought is Appropriate.**

17 U.S.C §§ 502(a), 512(f), and 1203, authorize any courts having jurisdiction to grant temporary injunctions on such terms as it may deem reasonable to prevent or restrain further infringement of copyright or violations of other applicable rights.

**1.      Entry of an Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Copyrights is Appropriate.**

Plaintiff requests an order requiring defendants immediately cease all uses of the works listed on Schedule A to the complaint and any other of plaintiff's works. This relief is necessary to stop the ongoing harm to plaintiff's copyrights and goodwill and to prevent defendants from continuing to profit from their unlawful use of plaintiff's intellectual property rights.

Immediate injunctive relief in similar cases involving the unauthorized use of infringing intellectual property has been authorized[1].

**2.      Entry of an Asset Freeze Order Prohibiting Transfer of the Defendants' YouTube Channels, Defendants' AdSense Accounts, and Defendants' Funds Held in their AdSense Accounts and Associated Accounts During the Pendency of this Action is Appropriate.**

To preserve the *status quo*, plaintiff seeks an order temporarily modifying control of and prohibiting defendants from transferring use or control of their YouTube channels being used and controlled by defendants. Plaintiff also seeks an order restraining defendants' assets, including specifically (1) funds paid to or due in the future to the defendants for YouTube advertising revenue within the control of YouTube and Google LLC, and (2) funds in the possession of or transmitted through electronic funds transfer services, foreign banks and domestic banks, payment service providers and money transfer services that defendants use to transfer funds to themselves or others from their Google Adsense accounts.

---

[1] *See Talavera Hair Prods., Inc. v. Taizhou Yunsung Elec. Appliance Co., Ltd.,* No. 18-CV-823-JLS (JLB), 2018 U.S. Dist. LEXIS 199020 (S.D. Cal. May 10, 2018) (Order Granting Ex Parte Application for Entry of Temporary Restraining Order); *Gucci Am., Inc. v. Los Altos Boots, Inc.,* No. CV 14-06680 BRO (AJWx), 2014 U.S. Dist. LEXIS 190411 (C.D. Cal. Aug. 27, 2014) (same); *Cisco Sys. v. Shenzhen Usource Tech. Co.,* No. 5:20-cv-04773-EJD, 2020 U.S. Dist. LEXIS 127509 (N.D. Cal. July 20, 2020) (same); *Feldenkrais Guild of N. Am. v. Wildman*, No. 18-cv-02340-YGR, 2018 U.S. Dist. LEXIS 73714 (N.D. Cal. May 1, 2018)(same).

Defendants are foreign nationals operating online residing in nations with weak legal regimes. Once they become aware of litigation against them, defendants will change the ownership or modify their YouTube channels and content, change payment accounts, redirect traffic to other accounts, and transfer assets and ownership of the YouTube and AdSense accounts, and thereby thwart the Court's ability to grant meaningful relief. (Rollin Decl. ¶¶ 7, 10, 12).

Here, an interim order prohibiting Defendants from transferring their YouTube channels, AdSense accounts, and freezing their assets in those accounts preserves the *status quo*, and ensures that this Court, after fully hearing the merits of this action, will be able to afford plaintiff full relief. *See International Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc.*, 80 F.3d 749 (2d Cir. 1996); *SEC v. ETS Payphones*, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to restrain all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case). *See also* cases cited at footnote 1 above.

Courts may issue broad asset restraints to preserve the availability of permanent relief, including assets that are not directly traceable to the fraudulent activity that serves as a basis for the equitable relief requested. *See Levi Strauss & Co.*, 51 F.3d at 987-88 (upholding asset restraint, including assets not linked to the profits of the alleged illegal activity, noting the defendants may request the court exempt any particular assets); *Kemp v. Peterson*, 940 F.2d 110, 113-14 (4th Cir. 1991) (district court may restrain assets not specifically traced to illegal activity).

Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Specifically, federal courts have held that where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued ex parte. See *F.T. Int'l Ltd v. Mason*, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); *CSC Holdings, Inc. v. Greenleaf Elec., Inc.,* 2000 WL 715601 (N.D. Ill. 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets).

This Court has broad authority to grant such an order. The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a defendant from

transferring assets in cases where an equitable interest is claimed. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999). In light of the illicit nature of the infringement business and the ability of infringers to practically eliminate their evidentiary trails by conducting their business entirely over the Internet, courts in the Eleventh Circuit, among others, have particularly noted the significance of such asset restraints in cases involving infringing defendants. *Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992).

In this case, Defendants' blatant violations of federal copyright laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets. Moreover, as defendants' businesses are conducted anonymously over the Internet, Plaintiff has additional cause for *ex parte* relief, as defendants may easily secret or transfer their assets without the Court's or plaintiff's knowledge.

### D.    A Bond Should Secure the Injunction.

Because of the strong and unequivocal nature of plaintiff's evidence of infringement, plaintiff respectfully requests this Court require it to post a bond of no more than five thousand dollars ($5,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice. The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

### IV.    CONCLUSION

In view of the foregoing, plaintiff respectfully requests this Court grant this motion defendants identified on Schedule "A" to the complaint, and schedule a hearing on Plaintiff's motion for a preliminary injunction. Plaintiff respectfully requests the Court permit the parties, including witnesses, to appear and testify as necessary telephonically or by remote video at the hearing on plaintiff's motion for a preliminary injunction, in accordance with the administrative orders of this Court. A proposed order has been submitted by counsel to chambers consistent with this motion.

DATED:  August 23, 2023                              Respectfully submitted,


                                                     */s/ Matthew L. Rollin*
                                                     MATTHEW L. ROLLIN

**SRIPLAW, P.A.**
*Counsel for Plaintiff Viral DRM LLC*

APPLICATION FOR TEMPORARY RESTRAINING ORDER

CASE NO. 3:23-CV-04300