Matthew L. Rollin (SBN 332631)
**SRIPLAW, P.A.**
8730 Wilshire Boulevard
Suite 350
Beverly Hills, California 90211
323.452.5600 – Telephone
561.404.4353 – Facsimile
matthew.rollin@sriplaw.com

Counsel for Plaintiff
Viral DRM LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIRAL DRM LLC, | CASE NO.: 3:23-cv-04300 |
| Plaintiffs, | **DECLARATION OF MATTHEW L. ROLLIN** |
| v. | |
| YOUTUBE UPLOADERS LISTED ON SCHEDULE A, | |
| Defendants. | |

I, Matthew L. Rollin, declare and say:

1. I am an attorney for Viral DRM LLC in the above captioned action.

2. I submit this Declaration in support of Plaintiff's motion for entry of temporary restraining order, preliminary injunction, and order restraining transfer of assets against defendants listed on Schedule "A" to the complaint in this action.

3. I am personally knowledgeable of the matters set forth in this Declaration and, if called upon to do so, I could and would competently testify to the following facts set forth below.

4. My firm, in cooperation with plaintiff Viral DRM, investigated the defendants who are operators of YouTube channels that monetize the videos on their channels using Google AdSense. To determine the defendants' true identities, plaintiff filed an action in the Northern District of Georgia pursuant to 17 U.S.C. § 512(h), Miscellaneous case number 2023-mi-00012, to

1  obtain a subpoena directed to Google, LLC to provide plaintiff with the defendants' identities.
2  Google, LLC's response to the subpoena revealed that the identifying information defendants
3  provided in their counternotices attached to the complaint as Exhibit 4 was false information.
4  Furthermore, the information the defendants provided to YouTube did not match the information
5  defendants provided in their Google AdSense accounts. The information produced by Google
6  confirmed that the defendants all falsified their identities on YouTube.

7      5.    Attached as Exhibit 1 to the Declaration of Brandon Clement is a list showing the
8  defendants' YouTube channel names, links to their channels, the number of subscribers, the number
9  of videos, and the number of views for the defendants' most popular videos. Since the defendants'
10 infringement was discovered earlier this year, several of the defendants have had their channels
11 removed from YouTube due to repeated infringement for reasons explained below. For all the
12 defendants but one who continue to have live channels on YouTube, those channels are extremely
13 popular and valuable with over 100,000 subscribers, numerous videos, and videos with over 100,000
14 views or more. These are very valuable YouTube channels that earn significant revenue from the
15 display of pirated video content.

16     6.    Based upon my experience and research in litigations involving online piracy, in the
17 absence of a temporary restraining order without notice, defendants can and will significantly alter
18 the *status quo* before the Court can determine the parties' respective rights. In particular, the
19 YouTube channels at issue here are under defendants' complete control and, as such, defendants
20 have the ability to change the ownership or modify the information and content, change payment
21 accounts, change AdSense accounts, redirect traffic to other accounts, and transfer assets and
22 ownership of YouTube channels at a moment's notice.

23     7.    The modifications by defendants can happen in a short span of time after defendants
24 are provided with notice of this action, and if provided with notice defendants can easily
25 electronically transfer and secret the funds sought to be restrained if they obtain advance notice of
26 plaintiff's motion for TRO and restraint of assets and thereby thwart the Court's ability to grant
27 meaningful relief and can completely erase the *status quo*.

28     8.    The motion for TRO was filed on an *ex parte* basis to prevent an injustice from

2

DECLARATION OF MATTHEW L. ROLLIN

occurring whereby defendants transfer and secret funds and avoid accountability before this Court can restrain and enjoin them from doing so. Plaintiff has reason to believe that defendants will hide their assets and never voluntarily make their assets available for recovery pursuant to an accounting of profits. Plaintiff has reason to believe that the defendants will not adhere to the authority of this Court any more than they have adhered to federal copyright laws.

9. As already noted, pirates like defendants do not disclose their locations or true identities. Defendants provided Google with minimal identifying information making it easy for them to quickly shut down one channel and open another under a new name. Furthermore, much of the defendants' identifying information was false. It has been my experience, which I have further confirmed with extensive research, that these defendants will go on committing piracy and infringement under new names when provided notice of a lawsuit.

10. It is also my experience when pirates like defendants receive notice of a lawsuit they do not use that opportunity to appear in court to defend their actions. Rather, upon notification of legal action, pirates and infringers take the opportunity to move assets and locations for the purpose of avoiding law enforcement. Infringers will immediately move any financial assets out of accounts that may be subject to the court's jurisdiction, such as a Google AdSense account or money transfer account, and into accounts located offshore where they are not subject to a seizure order. Pirates that operate commercial YouTube channels shut down those channels and open others under a different alias. As a result, if notice is provided to these defendants before temporary injunctive relief is obtained and implemented, the defendants will take unlawful steps for the purpose of avoiding legal action and rendering further prosecution of this action fruitless.

11. Defendants use non-party internet video platform YouTube to support and drive traffic to their infringing operations. Defendants use this platform to sell advertisements and earn money from foreign countries by directing their pirated videos to viewers in the United States. YouTube has a terms of service that prohibits the defendants' activities described in the complaint. Defendants were required to abide by and agree to those terms in connection with their activities. The terms generally require a) that uploaders observe applicable laws and regulations applicable to them in all countries where they operate; and b) prohibit uploaders from using the platform to

infringe any third-party's copyrights or other intellectual property rights or rights of publicity or privacy in connection with their activities.

12. I know from multiple prior actions, including the miscellaneous case 2023-mi-00012 filed in the Northern District of Georgia where plaintiffs obtained a subpoena directed to Google, LLC, that Google has the ability to notify defendants and communicate with defendants effectively. I also know that Google maintains additional contact e-mail addresses for the defendants at issue. As a result, in connection with Google's compliance with a temporary restraining order, such as the temporary restraining order plaintiff is requesting here, defendants will receive notice from Google of this Court's actions. Indeed, it is Google's practice to notify defendants of the actions it takes against them, such as disclosing their personal identifying information, prior to taking those actions. Therefore, to avoid Google's practices thwarting effective relief in this case, it will be necessary to order Google not to notify defendants before implementing the TRO plaintiff is requesting.

13. It is necessary for defendants who operate entirely online to provide Google with valid electronic means to contact them. Defendants must maintain accurate e-mail addresses in order to communicate with Google, receive notice of DMCA takedowns, submit counternotices, receive payment advices, and communicate with YouTube concerning their YouTube channels.

14. Each defendant will be provided with notice of this action electronically. Plaintiff will email the summons, complaint, and any court orders to defendants to their email addresses provided by Google. Plaintiff will also notify defendants of this action via website posting. Plaintiff has a website for notice and will be posting copies of the complaint, the motion for TRO, and all other pleadings, documents, and orders on file in this action on its designated website located at www.sriplaw.com/notice ("Plaintiff's Website"), such that anyone accessing Plaintiff's Website will find copies of all documents filed in this action. In this manner, defendants can access all electronic filings to view, print, or download any document filed in the case similar to the Court's CM/ECF procedures. The address for Plaintiff's Website will be provided to defendants via their known e-mail accounts and will be included as part of service of process in this matter.

15. Moreover, service by posting on Plaintiff's website will be an additional source of reliability as defendants will be able to see copies of the complaint and all other documents in this matter electronically via their Internet browser.

16. According to Google's subpoena response, defendants are residing and/or operating from the following countries: Ukraine, Slovenia, Albania, Viet Nam, and Egypt. I reviewed the Hague Convention on the Service Abroad of Judicial and Extra- Judicial Documents in Civil and Commercial Matters ("Hague Convention") and its website maintained here: https://www.hcch.net/en/home.

17. Ukraine is a party to the Hague Convention: https://www.hcch.net/en/states/authorities/details3/?aid=251 Ukraine has not opposed the service of documents in their territory by the alternative means of service outlined in Article 10 of the Hague Convention, including the service of process by postal channels. The Hague Convention does not preclude service by e-mail or website publication, and the declarations to the Hague Convention filed by Ukraine do not expressly prohibit e-mail service or service by website publication. Furthermore, service by normal means is currently impossible because of this declaration dated 09-03-2022*:* "In view of the ongoing aggression of the Russian Federation against Ukraine, Ukraine hereby informs the Depositary […] of the inability to guarantee the fulfilment by the Ukrainian side of obligations [under the above Convention] to the full extent for the period of the armed aggression of the Russian Federation and the martial law in place in the territory of Ukraine until complete termination of the encroachment upon the sovereignty, territorial integrity and inviolability of Ukraine."

18. Slovenia is a party to the Hague Convention: https://www.hcch.net/en/states/authorities/details3/?aid=272 Slovenia has objected on a limited basis to the service of documents in their territory by the alternative means of service outlined in Article 10 of the Hague Convention, including the service of process by postal channels, as follows: "In accordance with Article 10 of the Convention, the Republic of Slovenia declares that the service of documents pursuant to Article 10, item a), is only permitted if judicial documents are sent to the addressee by registered letter with acknowledgement of receipt and the documents are written in, or

accompanied by, a translation into the Slovene language." The Hague Convention does not preclude service by e-mail or website publication, and the declarations to the Hague Convention filed by Slovenia do not expressly prohibit e-mail service website publication. If the court grants alternative service on defendants in Slovenia, plaintiff will transmit a copy of the documents translated into Slovene.

19. Albania is a party to the Hague Convention: https://www.hcch.net/en/states/authorities/details3/?aid=709 Albania has not opposed the service of documents in their territory by the alternative means of service outlined in Article 10 of the Hague Convention, including the service of process by postal channels. The Hague Convention does not preclude service by e-mail or website publication, and the declarations to the Hague Convention filed by Albania do not expressly prohibit e-mail service or service by website publication.

20. Egypt is a party to the Hague Convention: https://www.hcch.net/en/states/authorities/details3/?aid=407 Egypt has objected to the service of documents in their territory by the alternative means of service outlined in Article 10 of the Hague Convention, including the service of process by postal channels. However, the Hague Convention does not preclude service by e-mail or website publication, and the declarations to the Hague Convention filed by Egypt do not expressly prohibit e-mail service website publication. Thus, there are no international agreements prohibiting service by e- mail or website posting for residents of Egypt.

21. Viet Nam is a party to the Hague Convention: https://www.hcch.net/en/states/authorities/details3/?aid=1054 Viet Nam has objected on a limited basis to the service of documents in their territory by the alternative means of service outlined in Article 10 of the Hague Convention, including the service of process by postal channels, as follows: "The Socialist Republic of Viet Nam does not oppose to the service of documents through postal channels mentioned in paragraph a of Article 10 of the Convention if the documents forwarded via postal channels are sent via registered mail with acknowledgement of receipt." The Hague Convention does not preclude service by e-mail or website publication, and the declarations to the Hague Convention filed by Viet Nam do not expressly prohibit e-mail service website publication. If

the court grants alternative service on defendants in Viet Nam, plaintiff will obtain acknowledgement of receipt of the documents prior to filing proof of service.

22.   I have investigated and identified the requirements necessary to restrain assets in the possession of Google, Google AdSense, and other associated payment processors and money transfer agents. As a result, I am familiar with the steps necessary to identify and restrain assets of the defendants in the possession of these non-parties that process and remit payments to defendants. Multiple past actions filed by me and my firm against pirates and counterfeiters have demonstrated that defendants like the ones in this case often do not identify the payment accounts they are using in attempts to evade detection. Based on past experience in similar cases, I reasonably believe that YouTube, Google, Google AdSense, and other associated payment processors and money transfer agents have the ability to and will in fact comply with a temporary restraining order of the type now sought by plaintiff on the terms in the proposed order submitted to the court.

I declare under perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 23, 2023.

*/s/ Matthew L. Rollin*
MATTHEW L. ROLLIN